IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| DAN GOODRICK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV05-094-C-EJL |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| SGT. SHIRLEY ROANE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court are the following motions: (1) Plaintiff's Motion for Summary Judgment (Docket No. 12); (2) Defendant's Motion for Summary Judgment (Docket No. 15); and (3) Plaintiff's Motion to Strike (Docket No. 20). Having carefully reviewed the record, the Court has determined that oral argument on the pending motions would not significantly assist the Court in rendering its decision. Therefore, the Court will proceed to issue its determination based on the pending motions and the record before it.

The Court has determined that both parties' Motions for Summary Judgment will be denied, and the case will be set for trial. Plaintiff's Motion to Strike will also be denied.

## BACKGROUND

Plaintiff is an inmate in the custody of the Idaho Department of Correction (IDOC). The circumstances giving rise to Plaintiff's claims arose when he was incarcerated at the Idaho Correctional Institution - Orofino (ICI-O). He filed his lawsuit against Sargent Shirley Roane, a correctional officer at ICI-O.

**ORDER  1**

Plaintiff alleges that he entered into a settlement agreement in *Goodrick v. Spalding, et al.*, CV01-190-C-EJL, a lawsuit challenging the IDOC's policy on religious worship rituals. Plaintiff claims that the agreement allowed him to possess a limited amount of religious prayer oil in his cell and to store extra oil in a property room at ICI-O. When the oil was depleted, he would be allowed to request the use of the stored prayer oil.

Plaintiff alleges that Defendant Roane knowingly violated his constitutional rights as established in the prior lawsuit and settlement agreement. He alleges that Defendant Roane destroyed his prayer oils, and denied his request to replenish the empty vials he kept in his cell. Plaintiff further alleges that Defendant harassed and retaliated against him for attempting to enforce the settlement agreement and violated the declaratory judgment he had previously obtained. He also claims that he was denied the opportunity to visit with a family member, after he complained about Defendant Roane's conduct.

## SUMMARY JUDGMENT STANDARD

Summary judgment will be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial."

**ORDER  2**

Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31(internal citation omitted). The Court is required, however, to determine whether the evidence set forth meets the requirements of Rule 56(c) and (e). In so doing, the Court is to look at admissibility of the *content* of the evidence, rather than the admissibility of the *form* of the evidence. *See Fonseca v. Sysco Food Service of Arizona*, 374 F.3d 840, 846 (9th Cir. 2004); *Block v. City of Los Angeles,* 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56."); *Fed. Deposit Ins. Corp. v. New Hampshire Ins. Co.*, 953 F.2d 478, 485 (9th Cir. 1991) (same). Declarations that contain hearsay are admissible for summary judgment purposes if they "could be presented in an admissible form at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 377 U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

### A. Standard for First Amendment Claim

Plaintiff alleges that Defendant violated his First Amendment rights through the denial of his use of prayer oils for his religious observance. Inmates retain their free exercise of religion rights in prison. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). However, challenges to prison restrictions that are alleged "to inhibit First Amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections

**ORDER 3**

system, to whose custody and care the prisoner has been committed in accordance with due process of law." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125 (1977) (citation omitted). The courts, therefore, must balance prisoners' First Amendment rights against the goals of the correctional facility. *See O'Lone v. Estate of Shabazz*, 482 U.S. at 348. "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safely*, 482 U.S. 78, 87 (1987).

To make such a determination, a court reviews four factors: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" exist. 482 U.S. at 89-90.

In order to prevail on a First Amendment claim, Plaintiff must show that his set of beliefs constitutes a religion and that he has a sincere belief in that religion. *United States v. Seeger*, 380 U.S. 163, 166 (1965)(the set of beliefs must occupy a place in the life of the observer parallel to that filled by the orthodox belief in God, be sincerely held, and in their own scheme of things, be religious). The Court views its previous ruling in *Goodrick v. Spalding, et al.*, CV01-190-C-EJL as dispositive on the issue of Plaintiff's sincerity in his religious beliefs and the use of prayer oils as part of his religion.

### B. Religious Land Use and Institutionalized Persons Act

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc, provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person . . . is in furtherance of a compelling governmental interest and . . . is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000 cc- 1(a). The RLUIPA applies to entities receiving federal

**ORDER  4**

financial assistance. *Id.* at (b) (1). The statute has been upheld "as a permissible legislative accommodation of religion that is not barred by the Establishment Clause." *Cutter v. Wilkinson*, 125 S. Ct. 2113, 2121 (2005).

Under RLUIPA, the inmate bears the initial burden of showing that the prison's policy constitutes a substantial burden on the exercise of the inmate's religious beliefs. *Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir. 2005). If the inmate "establishes the prima facie existence of such a substantial burden, . . . [prison officials] shall bear the burden of persuasion to prove that any substantial burden on [the inmate's] exercise of his religious beliefs is both 'in furtherance of a compelling governmental interest' and the 'least restrictive means of furthering that compelling governmental interest.'" *Id.* at 995 (quoting 42 U.S.C. § 2000cc-1(a); § 2000cc-2(b)). RLUIPA is to be construed broadly in favor of protecting an inmate's religious rights. *Id.*

The Court views its previous ruling in *Goodrick v. Spalding, et al.*, CV01-190-C-EJL as dispositive on the issue of Plaintiff's prima facie showing of sincerity in his religious beliefs and the substantial burden placed on his religious exercise through a ban on the use of prayer oils.

### PENDING MOTIONS

**Motions for Summary Judgment**

**A. Undisputed Facts**[1]

Plaintiff is an inmate in the custody of the Idaho Department of Correction. At the time the allegations in the Complaint arose, Plaintiff was housed at the Idaho Correctional Institution at Orofino (ICI-O). *Complaint*, p. 4.

In the case of *Goodrick v. Spalding*, CV01-190-C-EJL, the Court previously determined that Defendants' refusal to order prayer oil for him to use in his religious

---

[1] The Court has combined the undisputed facts from the parties' separate Motions for Summary Judgment. It appears from the record that the parties are in substantial agreement about the undisputed facts in this case.

**ORDER  5**

observance as a Gnostic Catholic violated his rights under RLUIPA. *Docket No. 137, CV001-190-C-EJL*. As part of a settlement agreement, Plaintiff was authorized to store two vials of his prayer oils in his cell and the remaining vials were to be stored in the property room at ICI-O. *Complaint*, Exhibit A. The agreement stated that "ICI-O shall store that portion of these previously-ordered aromatic fluids over and above that amount that Goodrick will be allowed to keep in his cell until such time as they are either used by him or sent out of ICI-O, or he orders additional aromatic fluids." *Id*., Exhibit A, p. 2-3. The Deputy Warden at ICI-O, Eric MacEachern, was a named Defendant in the prior lawsuit, and he was present at the settlement conference. The settlement agreement contained a provision stating that the "terms and conditions of this agreement shall be confidential and shall not be revealed to any persons or entities not a party hereto." *Id*., Exhibit A, p. 4.

Plaintiff claims that he filed grievances against Defendant Roane, complaining of harassment and retaliation. *Complaint*, p. 7-8. He alleged that Defendant Roane denied him a visit with his brother-in-law, and Plaintiff filed a grievance against Roane in September of 2004. Plaintiff's sister filed a complaint against Defendant Roane with the Office of Professional Standards on October 11, 2004.

Defendant Roane destroyed Plaintiff's prayer oils on October 17, 2004. *Complaint*, Exhibit H. Pursuant to IDOC policy, a property disposition form is given to inmates when action is taken on unauthorized personal property. It provides a choice for inmates to either (1) donate the property to a charitable organization; (2) destroy the property, or (3) mail it out of the prison at the inmate's expense. *Complaint*, Exhibit I. Plaintiff did not receive a property disposition form prior to the destruction of his prayer oils. Instead, there is a notation on a property confiscation sheet dated February 9, 2004, indicating that Plaintiff was given the "opportunity to exchange for the remaining 2 vials[;] he refused." The same form contains a notation indicating that the oils were destroyed on October 17, 2004. *Defendants Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, Docket No. 14*, Exhibit B.

**ORDER  6**

Inmates Pausch, Lamm, and French executed declarations stating that they saw Correctional Officer Brewer approach Plaintiff with a box of prayer oils in November of 2004. They claim that Officer Brewer attempted to deliver the prayer oils to Plaintiff after informing him that the oils were the ones stored in the ICI-O property room. *See Declarations of Pausch, Lamm, and French*, *Complaint,* Exhibit B. The inmates allegedly heard Plaintiff inform Officer Brewer that the prayer oils needed to be returned to the property room and stored for him in accordance with the settlement agreement between Plaintiff and the IDOC. *Id*.

Plaintiff sent a concern form on January 19, 2005 to the Property Room, requesting his last two bottles of prayer oil. Defendant Roan responded to the concern by saying: "We are not holding any oils for you. We do not store unauthorized or excess property." *Complaint*, Exhibit C. Defendant Roan claimed that she did not know about the Court's Order pertaining to the storage of Plaintiff's prayer oils in the property room. *Id.*, Exhibit H.

In February of 2005, IDOC officials credited Plaintiff's inmate trust account with twenty dollars, and offered to provide additional prayer oils to him in order to resolve the issue of the confiscated oils. *Complaint*, Exhibit E.

**DISCUSSION**

At the outset, the Court reminds the parties that the only claims upon which Plaintiff was authorized to proceed were the First Amendment and RLUIPA claims. Defendants point out that Plaintiff has sued Defendant Roane in another lawsuit for a pattern of alleged retaliation and harassment, and therefore, the retaliation claim is not considered part of the present lawsuit.

Based on the record before the Court, it appears that the parties agree upon the basic facts in the case. Namely, that a settlement agreement was in place, providing for Plaintiff's storage of prayer oils in the ICI-O property room. The record also shows that Plaintiff had a pattern of requesting replenishment of the two vials of oil he kept in his cell when he had

finished using them. The property confiscation sheet attached to Defendants' Motion for Summary Judgment, shows this pattern of exchanging the oils, dating back to at least February of 2004. *Docket No. 14*, Exhibit B.

Defendant Roane was apparently in charge of the property room at the time Plaintiff's oils were destroyed, and her defense to the destruction of the oils was that she had no knowledge of the settlement agreement, allowing Plaintiff to store his excess prayer oils in the property room. Therefore, the main issues to be resolved are whether Defendant Roane is entitled to qualified immunity for the destruction of Plaintiff's prayer oils, and if not, whether there are genuine issues of material fact, requiring a fact-finder to determine the extent to which Plaintiff's constitutional and statutory rights were violated.

**Qualified Immunity Standard**

The Supreme Court has instructed that rulings on the qualified immunity defense "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive, " inasmuch as the defense is "an immunity from suit rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). To the contrary, a state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights. *Id*. True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

**ORDER 8**

The threshold question in considering application of the qualified immunity defense is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). If, viewing the alleged injuries in a light most favorable to the plaintiff, the Court finds that a constitutional right appears to have been violated, it proceeds to the next step, which is to inquire whether the right was clearly established. *Id*. For purposes of the Motions for Summary Judgment, the Defendants have agreed that Plaintiff's constitutional and statutory rights were clearly established in his prior lawsuit, *Goodrick v. Spalding*, CV01-190-C-EJL.

Application of qualified immunity is appropriate where "the law did not put the [defendant] on notice that his conduct would be clearly unlawful. *Id.*, 533 U.S. at 195. However, if there is a genuine dispute as to the "facts and circumstances within an officer's knowledge," or "what the officer and claimant did or failed to do," summary judgment is inappropriate. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993). When a § 1983 defendant makes a properly supported motion for summary judgment based on immunity, the plaintiff has the obligation to produce evidence of his own; the district court cannot simply assume the truth of the challenged factual allegations in the complaint. *Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

Defendant argues that the *Saucier v. Katz* standard provides immunity for her act of destroying the prayer oils because it was a reasonable mistake as to what the law requires. *Defendants Memorandum in Support of Summary Judgment*, Docket No. 15-2, p. 4. The problem with this argument is that Defendant ignores the qualified immunity standard set forth in *Harlow v. Fitzgerald*, 457 U.S. at 818, which states that immunity applies so long as the defendant's conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights. The *Harlow* case also holds that a state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights. *Id*.

**ORDER 9**

Although Defendant Roane claims that she was unaware of the settlement agreement, setting forth Plaintiff's right to use the religious worship oils and store the extra containers in the property room, it is obvious from the property confiscation sheet maintained in the property room that there was a pattern of replacing used vials of oils with new ones held in the property room.  Defendant Roane admits that she was in charge of the property room at the time the oils were destroyed.  Even if Defendant can ultimately prove that she had no knowledge of the actual settlement agreement's terms, it is not objectively reasonable to claim that she had no obligation to ascertain why there was a pattern of holding the prayer oils in the property room and then providing them to Plaintiff when he requested a new supply.  It also appears that once Defendant Roane became the manager of the property room, she should have known that the excess oils were being stored there for a purpose, and that she could have easily obtained this information from Deputy Warden MacEachern, who was a party to the settlement agreement.

Based on the foregoing, if there is a dispute as to the facts and circumstances within Defendant Roane's knowledge or what she did or failed to do, then summary judgment will not be granted on a qualified immunity defense.  *Act Up/Portland v. Bagley*, 988 F.2d at 873.

**Genuine Issues of Material Fact**

The other basis upon which Defendant claims she is entitled to summary judgment is Plaintiff's alleged failure to show any measurable damages, a necessary element of both a claim under Section 1983 and RLUIPA.  Defendant argues that the longest period of time Plaintiff could have been denied his prayer oils was from January 19, 2005, the date he requested new vials of oil, until the IDOC provided replacement oils which appears to be sometime in March of 2005.  Defendant also claims that the destruction of the oils placed only a de minimis burden, if any, on Plaintiff's religious worship.  IDOC officials placed $20.00 on Plaintiff's inmate trust account, and appear to have provided some replacement oils for the ones that were destroyed.  Therefore, Defendant argues that Plaintiff has been compensated for the only conceivable remedy to which he is entitled.

**ORDER 10**

Plaintiff clearly alleged in his Complaint that he suffered harm from the destruction of his prayer oils. He alleges that the use of the oils is "mandatory in performing Plaintiff's daily rituals which are required (4) times a day." *Complaint*, p. 15. Plaintiff claims that he has "suffered not only actual but also mental and emotional injury and [was] denied his right to worship and practice his religion due to Roane's illegal, unauthorized, malicious and retaliatory actions against Plaintiff." *Plaintiff's Statement of Material Facts*, *Docket No. 12-4*, p. 6.

The Court disagrees with Defendant's assessment of the remedies available to Plaintiff. In the Ninth Circuit case of *Oliver v. Keller*, 289 F.3d 623, 630 (9th Cir. 2002), the Court held that to "the extent appellant's claims for compensatory, nominal or punitive damages are premised on alleged Fourteenth Amendment violations, and not on emotional or mental distress suffered as a result of those violations, § 1997e(e) is inapplicable and those claims are not barred." *Id.* at 630. Plaintiff cannot pursue damages for mental and emotional injury as separate claims pursuant to the limitation set forth in 42 U.S.C.
§ 1997e(e), but he may pursue a claim for injury arising out of the constitutional and statutory violations. *Id.*; *see also Canell v. Lightner*, 143 F.3d 1210, 1213 (holding that 42 U.S.C. § 1997e(e), requiring a prior showing of actual injury, "does not apply to First Amendment claims regardless of the form of relief sought.").

Based on the foregoing, Defendants' argument that Plaintiff has no claims for damages upon which a fact-finder could render a decision is incorrect. Defendants are entitled to argue that Plaintiff's conduct contributed to his inability to use the prayer oils, thereby reducing the potential damages claim. But Defendant's self-selected remedy of twenty dollars and the cost of replacement prayer oils does not limit Plaintiff's available remedies.

**Conclusion**

Both parties filed Motions for Summary Judgment in this action, but the Court has determined that genuine issues of material fact exist as to Defendant's knowledge of the Court Order, allowing Plaintiff to store oils in the property room and then requesting replacement

of the vials in his cell.  There are also genuine issues of material fact regarding the extent to which Plaintiff suffered damages as a result of the constitutional and statutory violations.  Accordingly, the Motions for Summary Judgment will be denied and the Court will send out a separate trial-setting order for his action.

### Plaintiff's Motion to Strike

Plaintiff's final motion requests that Defendant's reply brief to the Motion for Summary Judgment be stricken as untimely.  As set forth in the affidavit of Defendant's counsel, the reply brief was timely filed according to the due date set on the Court's CM/ECF system.  Defendant's counsel is entitled to rely on the Court's calendaring system, and there was no other deadline set by the Court in a scheduling order.  Therefore, Plaintiff's request to strike Defendant's reply brief is denied.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Docket No. 12) is DENIED.

IT IS FURTHER HEREBY ORDERED that Defendant's Motion for Summary Judgment (Docket No. 15) is DENIED.

IT IS FURTHER HEREBY ORDERED that Plaintiff's Motion to Strike (Docket No. 20) is DENIED.

DATED:  **March 19, 2007**

Honorable Edward J. Lodge
U. S. District Judge

**ORDER  12**